# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 23-1523V**

REBECCA RICHARDSON,

Petitioner,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent.

Chief Special Master Corcoran

Filed: August 5, 2026

*John David Toren, Menzer Law Firm, PLLC, Seattle, WA, for Petitioner.*

*Crystal Fialkowski, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT[1]

On September 5, 2023, Rebecca Richardson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a right shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, which was caused by an influenza ("flu") vaccine administered on September 24, 2021. Petition at 1.[3]

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] Petitioner also alleges that her SIRVA was caused-in-fact by the vaccination. Petitioner at 8.

For the reasons set forth below, I find Petitioner has established entitlement to damages.

## I. Procedural History

The parties were unable to resolve the claim, and Respondent filed a Rule 4(c) Report on January 20, 2025. Respondent's Rule 4(c) Report ECF No. 26. The parties were ordered to brief entitlement on February 25, 2025. ECF No. 27. Petitioner filed her brief on June 11, 2025. Petitioner's Motion for a Ruling on the Record ("Mot"). Respondent filed a response on July 10, 2025. Response to Petitioner's Motion for a Ruling on the Record ("Resp."), ECF No. 31. Petitioner filed a reply on July 23, 2025. Petitioner's Reply to Respondent's Response to Petitioner's Motion for a Ruling on the Record on Entitlement ("Reply"), ECF No. 33.

## II. Factual Background

Petitioner received a flu vaccine on September 24, 2021. Ex. 2 at 1.[4] Prior to her vaccination, she had no history of right shoulder pain or dysfunction.

On September 29, 2021, Petitioner saw Penny Vance, a licensed massage practitioner, complaining of right shoulder, neck, and scapula pain.[5] Ex. 4 at 6. The date of injury was listed as September 24, 2021. *Id.* Between October 13, 2021, and October 12, 2022, Petitioner saw Penny Vance sixteen more times. *Id.* at 7-21. During this period, Petitioner consistently reported pain in her right shoulder, as well as stiffness, stress, weakness, and tenderness. *Id.* at 8 (record from November 10, 2021 describing right shoulder and neck pain, stating "neck is stressed because of sh[oulder]"). She also demonstrated restrictions in her range of motion. *Id.* at 16. On July 20, 2022, Petitioner reported that she had begun experiencing pain in her left shoulder for two weeks and began treatment on both of her shoulders. *Id.* at 18-21.

Petitioner reported shoulder pain on November 9, 2021, to her primary care provider, Dr. Zohreh Safai. Ex. 3 at 67. Her injury was described as "right shoulder and arm pain since 9/24 after she received the flu vaccine." *Id.* at 69. Petitioner was assessed with a SIRVA and referred for x-rays and physical therapy. *Id.* at 70. An x-ray on

[4] The immunization summary indicates that Petitioner's flu vaccine was administered into the left deltoid. *Id.*

[5] The record from this visit notes that Petitioner could not lift her left arm, but this appears to be a documentation error. The remainder of the notes from and the diagram of the location of her symptoms all document right shoulder and neck symptoms. *See* Ex. 4 at 6.

November 12, 2021, showed minimal degenerative changes of the acromioclavicular joint. *Id.* at 60.

On February 22, 2022, Petitioner began physical therapy for shoulder pain "after flu shot." Ex. 5 at 4-6. Upon evaluation, the physical therapist observed "mildly reduced [right] shoulder" active range of motion, right rotator cuff weakness, and noted positive right shoulder impingement tests. *Id.* at 5-6. Examination of Petitioner's left shoulder and neck appeared normal. *Id.* Petitioner was diagnosed with rotator cuff tendinitis and was noted to show "[s]igns and symptoms consistent with [right] shoulder pain secondary to vaccine injection." *Id.* at 6. Petitioner stopped attending physical therapy after seven sessions on May 6, 2022. *Id.* at 18.

Petitioner also began acupuncture treatments, attending 14 between April 25 and September 1, 2022. Ex. 6 at 4. She described pain "that feels like a deep ache in her shoulder" and neck pain "slightly worse on the right side." *Id.* at 4-5. With regard to her neck pain, Petitioner explained that she "has a history of neck pain. Whenever she gets stressed she can feel her neck tightening up. When it gets tight, she also gets tension headaches." *Id.* at 5. The acupuncturist diagnosed Petitioner with pain in her right shoulder and cervicalgia. *Id.* at 6. On June 27, 2022, Petitioner reported feeling good in both shoulder but two days earlier "she felt her shoulders tighten up and she was having pain in both shoulders, when it is usually the right." *Id.* at 21. Thereafter, her subsequent acupuncture treatments focused on both shoulders. *Id.* at 23.

On August 17, 2022, Petitioner reported that her left shoulder was "bothering [her] as much as [her] right," and requested to schedule MRIs of both shoulders. Ex. 7 at 31. An MRI on September 27, 2022 showed moderate findings of glenohumeral capsular inflammation and edema in the deep subscapularis of her left shoulder. Ex. 8 at 48-49.

Petitioner saw Dr. Douglas Pepple, a sports medicine specialist, on September 28, 2022, for evaluation of shoulder pain. Ex. 8 at 14. She specifically reported constant pain in her right shoulder "after flu shot" since September 2021, and pain in her left shoulder since July 2022. *Id.* at 15. A physical examination showed that Petitioner's non-shoulder findings were all normal including those for her neck. *Id.* at 17.

Thereafter, Petitioner began chiropractic treatments, and had seven between October 17 and December 30, 2022. Ex. 9 at 9-14; Ex. 11 at 16-17. Her treatments were to address her right frozen shoulder and motion loss in her left shoulder. *Id.* at 10. The assessment states "Neck, Left Shoulder symptoms secondary to mechanical dysfunction." *Id.* She attended twelve additional appointments between March 10, 2023 and March 7, 2024. Ex. 11 at 4-15.

Petitioner returned to Dr. Pepple on January 18, 2023, for a follow-up visit regarding her bilateral shoulder pain. Ex. 8 at 26-27. She reported that her left shoulder pain had largely resolved but she had increasing right shoulder pain and reduced range of motion "since approximately Thanksgiving." *Id.* at 25, 27. Upon physical examination, Dr. Pepple observed that petitioner's range of motion in her right shoulder was restricted and opined that she was suffering from adhesive capsulitis. *Id.* at 28.

Petitioner had an MRI on January 31, 2023, which showed mild capsular injury or inflammation, very mild acromioclavicular degenerative joint disease, and signs of bursitis. Ex. 8 at 52.

On February 1, 2023, Petitioner returned to Dr. Pepple for treatment of left shoulder pain that had returned, as well as continued decreased range of motion in her right shoulder. Ex. 8 at 32, 33. She was diagnosed with adhesive capsulitis in both shoulders and referred for a corticosteroid injection, which was administered on February 9, 2023. Ex. 8 at 34, 40.

Between January 4, 2023, and March 13, 2024, Petitioner went to Laura Lou Massage on twelve occasions for additional massage therapy on both her left and right shoulders. Ex. 10 at 3-4; Ex. 12 at 2-10.

## III. Fact Findings and Ruling on Entitlement

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

In particular, a petitioner must establish that she suffered an injury meeting the Table criteria (*i.e.* a Table injury), in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. If a petitioner establishes a Table injury the burden shifts to respondent to establish a more likely alternative cause. Section 13(a)(1)(A), 11(c)(1)(C)(i), 14(a). If a petitioner cannot establish a Table injury, or she may pursue causation-in-fact under the legal standard set forth in *Althen v. Sec'y of Health & Hum. Servs.*, 418 F. 3d 1274, 1278 (Fed. Cir. 2005).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3,

identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an HPV vaccine. 42 C.F.R. § 100.3(a)(XVI)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g., NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

In addition to causation, a petitioner must also meet the requirements establishing that the vaccine received is "covered" by the Program, the duration and severity of petitioner's injury, and the lack of other award or settlement.[6] With regard to severity, a petitioner must show that she suffered the residual effects or complications of her injury or condition for more than six months after the administration of the vaccine. § 11(c)(1)(D)(i); *see Song v. Sec'y of Health & Hum. Servs.,* 31 Fed. Cl. 61, 65-66 (1994), aff'd, 41 F.3d 1520 (Fed. Cir. 2014) (noting that a petitioner must demonstrate the six-month severity requirement by a preponderance of the evidence). Finding that petitioner has met the severity requirement cannot be based on petitioner's word alone, though a special master need not base their finding solely on medical records. Section 13(a)(1); *see Colon v. Sec'y of Health & Hum. Servs.*, 156 Fed. Cl. 534, 541 (2021). Severity must be established regardless of whether the claim arises under the Table or is a causation-in-fact claim.

[6] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Had No Prior Right Shoulder Condition or Injury that would Explain her Symptoms

Respondent does not dispute that Petitioner meets this criterion. I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her right shoulder that would explain her symptoms.

#### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The medical records preponderantly establish onset of injury close-in-time to vaccination. Petitioner first reported shoulder pain on September 29, 2021 – less than a week after vaccination – and at that early date identified the day of vaccination as the start of the pain. Ex. 4 at 6. Thereafter, she consistently linked her shoulder pain to the time of administration of a flu vaccine. *See, e.g.,* Ex. 3 at 69. Further, Respondent does not contest this aspect of Petitioner's claim. Accordingly, there is preponderant evidence that establishes the onset of Petitioner's right shoulder pain more likely than not occurred within 48-hours of vaccination.

#### 3. Petitioner's Pain was Limited to her Vaccinated Shoulder

The record also establishes that Petitioner's pain was limited to her right shoulder. When she first sought treatment for shoulder pain, she consistently reported right shoulder pain, stiffness, and weakness.

Respondent argues that Petitioner experienced pain outside her shoulder. Report at 9; Resp. at 4-5. In particular, he argues that Petitioner "consistently and repeatedly described pain in her neck and down the length of her arm." *Id.* at 4 (citing Ex. 3 at 69, 83; Ex. 4 at 6, 7, 12; Ex. 5 at 19; Ex. 6 at 4-5; Ex. 7 at 10; Ex. 9 at 9-10).

Despite such instances of non-shoulder concerns, there is a preponderance of evidence that Petitioner's pain was limited to her right shoulder. First, Petitioner's records

consistently contain complaints of right shoulder pain and loss of range of motion, which are consistent with other SIRVA cases. *See, e.g.*, Ex. 3 at 70 (Petitioner reporting right shoulder pain since the flu vaccine and was assessed with a SIRVA); Ex. 4 at 16 (massage records noting right arm pain and movement limitations). Petitioner's diagnostic procedures were also, at least initially, limited to her right shoulder, and she received treatment for right shoulder pain. *See*, e.g., Ex. 5 at 5-6 (physical therapy record from February 22, 2022 describing Petitioner's symptoms). Further, to the extent that Petitioner did complain of right neck pain it was attributed to stress, no the vaccination. Ex. 4 at 8 (record from November 10, 2021 describing right shoulder and neck pain, stating "neck is stressed because of sh[oulder]"); Ex. 6 at 5 (Acupuncture record from September 1, 2022 stating Petitioner "has a history of neck pain. Whenever she gets stressed she can feel her neck tightening up.")

Second, although there are references in some records to pain radiating down Petitioner's right arm and neck, the majority of other records (at least until the summer of 2022) support a finding that Petitioner's pain was limited to her right shoulder and, more so, originated there. *See*, e.g., Ex. 3 at 67 (November 9, 2021 record describing right shoulder and arm pain since receiving the flu vaccine); Ex. 5 at 5-6 (physical therapy record that observed "mildly reduced [right] shoulder" active range of motion, right rotator cuff weakness, and noted positive right shoulder impingement tests).

While it is true that Petitioner complained of pain in her left shoulder as well, that occurred after the initial treatment and diagnosis of the right SIRVA. Ex. 4 at 18-21 (message therapy records from July of 2022 reporting Petitioner had begun experiencing pain in her left shoulder for two weeks); Ex. 6 at 21 (acupuncture record from June 27, 2022 stating that Petitioner was having "pain in both shoulders, when it is usually the right"). Further, early examination of Petitioner's neck and left shoulder appeared normal. *See, e.g.*, Ex. 5 at 5-6 (physical therapy records noting normal results after an examination of Petitioner's left shoulder and neck). The mere existence of records with pain outside the shoulder does not defeat a showing that Petitioner's treatment emphasis was shoulder-specific, and those complaints can also be disregarded in determining damages.

In the Vaccine Program, special masters have found that claims involving musculoskeletal pain *primarily* occurring in the shoulder are valid under the Table even if there are additional allegations of pain extending to adjacent parts of the body. *K.P. v. Sec'y of Health & Hum. Servs.*, No. 19-65V, 2022 WL 3226776, at *8 (Fed. Cl. Spec. Mstr. May 25, 2022) (holding that "claims involving musculoskeletal pain primarily occurring in the shoulder are valid under the Table even if there are additional allegations of pain

extending to adjacent parts of the body"). Accordingly, preponderant evidence supports this Table element as well.

#### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not dispute that Petitioner meets this criterion, and I find there is no indication that another condition or abnormality exists that would explain Petitioner's shoulder symptoms.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

That record shows that Petitioner received a flu vaccine intramuscularly on September 24, 2021, in the United States. Ex. 2 at 1, *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 1 at 2; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## Conclusion

**For all of the reasons discussed above, and based on consideration of the record as a whole, I find Petitioner is entitled to compensation.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master